**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**Tampa Division**

CASE NO.:＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿

T.H.E. INSURANCE COMPANY, a
Delaware insurance company,

     Plaintiff,

v.

LESLIE CASANOVA, an individual,
and SPORTSMAN'S INSURANCE
AGENCY, INC., a Florida corporation

     Defendants.

＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿／

## COMPLAINT

Plaintiff, T.H.E INSURANCE COMPANY, a Delaware insurance company, sues Defendants, SPORTSMAN'S INSURANCE AGENCY, INC. a Florida corporation, and LESLIE CASANOVA, an individual, and alleges:

## NATURE OF ACTION

Plaintiff, T.H.E. Insurance Company ("T.H.E.") entered into an Agent Placement Agreement (as more fully described below) with Defendant, Sportsman's Insurance Agency, Inc. ("Agent"). Defendant Leslie Casanova ("Ms. Casanova"), is the licensed producer of Agent and as such is responsible for all acts of Agent under Florida law. Pursuant to the agreement, the parties agreed that Agent would (a) solicit and submit potential insureds to T.H.E., (b) collect

57482037.7

premium, report on premium collected, and remit the premium to T.H.E., (c) deliver policies issued by T.H.E., and (d) provide service to T.H.E. policyholders. The agency agreement, and Florida law required Defendants to act as fiduciaries with regard to the services it provided to T.H.E., including the services identified above.

The agency agreement allowed for termination  on 60 day's written notice or immediately for breach of the agreement or "gross misconduct." Although Defendants have been repeatedly advised the agreement has been terminated, Agent has and continues to write business and deliver evidence of coverage to insureds that are not approved by T.H.E..  At the same time and continuing through the present date, Agent has failed to deliver the premium for the policies to T.H.E., failed to provide reports to T.H.E., and retained commissions to which it was not entitled.  These failures and other breaches of fiduciary and contractual obligations are the subject of this action and support T.H.E's. demand for monetary and non-monetary relief, including, but not limited to, preliminary and permanent injunctive relief.

## JURISDICTION, PARTIES, AND VENUE

1.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 because the action is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of attorney's fees, interest, and costs.

2

2.      Plaintiff, T.H.E. is an insurance company domiciled in Delaware with its principal place of business  in Fairfield County, Connecticut.

3.      Defendant, Agent is an insurance agency organized under the laws of Florida with a principal place of business in Volusia County, Florida.

4.      Defendant, Ms. Casanova, is an adult individual, residing in Volusia County, Florida, and otherwise *sui juris*.  Ms. Casanova is a Florida licensed insurance agent, holding a license with respect to surplus lines, general lines, and adjuster all lines, and the individual responsible for Agent. At all times material, Ms. Casanova was the agent in charge and the person at Agent responsible for receiving premiums from insureds with T.H.E. policies, certificates and extensions, reporting to T.H.E., complying with Florida insurance laws, and withholding and diverting commissions.  Ms. Casanova  had direct supervision and control over Agent and its employees.

5.      Venue is proper in this judicial district pursuant to 28 U.S.C. §1391, because Defendants reside in this District, the agreement more fully discussed below provides that any action to enforce or construe the agreement shall be exclusively initiated in any federal or state court of competent jurisdiction in Pinellas County, Florida, and the activities that form the basis of this Complaint occurred primarily, if not exclusively, in this District.

3

## GENERAL ALLEGATIONS

**A.    Agent and Ms. Casanova**

6.    Agent solicits and sells insurance to a group of proprietary insurance programs that the Agent operates on behalf of several membership organizations dedicated to shooting, hunting, and/or firearms, known collectively as the "SIAI Programs".    The line of business, which includes similar businesses, is denominated in the insurance industry as the "Entertainment and Amusement Park Insurance".

7.    Agent sells both individual policies and group policies to which members of the organizations were issued certificates of membership to the group policies.

8.    Ms. Casanova is the agent in charge for Agent.    Ms. Casanova is a Florida licensed insurance agent. Florida's Department of Insurance reflects the following for Ms. Casanova

| Valid Licenses | | |
|---|---|---|
| **Type** | **Issue Date** | **Qualifying Appointment** |
| SURPLUS LINES (0120) | 7/11/2024 | YES |
| GENERAL LINES (PROP & CAS) (0220) | 1/9/2012 | YES |
| HEALTH (0240) | 3/22/2013 | NO |
| ADJUSTER - ALL LINES (0620) | 3/29/2024 | YES |

**B.    The Agency Agreement**

9.    On or about August 7, 2015, T.H.E. and Agent entered into the Agent

Placement Agreement ("Agency Agreement").[1]  A true and correct copy of the Agency Agreement is attached as **Exhibit A**.

10.    Pursuant to the Agency Agreement, Agent was appointed the agent for T.H.E. and agreed to place the SAIA Programs business with T.H.E . *Id.*at ¶¶ 1-2.

11.    Relevant to the matters raised herein, the Agency Agreement provides:

    a.    Agent would have authority to bind T.H.E. for certain lines of policies that were within the rates and guidelines provided by T.H.E., *id.*at ¶6;

    b.    Agent would not have authority to make quotes for insurance of other coverage for or on behalf of T.H.E. outside of the SIAI Programs' rates and guidelines, unless and until authorized by T.H.E. in writing., *id.*;

    c.    Agent would not place, or cause to be placed, any advertisement with respect to T.H.E. in any publication, or issue or distribute any circular or paper referring to T.H.E., without the prior written approval of T.H.E., *id.*at ¶11;

    d.    Agent would not make use of the name, logo, or trademark of T.H.E. with the prior written approval of T.H.E., *id.;*

---

[1] All terms not defined herein shall have the meaning set forth in the Agency Agreement.

e.    Agent would be entitled to a base commission and a contingent commission as set forth in the Agency Agreement, *id.*at ¶13, Section B;

f.    To be eligible for any commission, Agent was required to remit all premium collected, less commission within 45 days of the bordereau date, *id.*at p. Section C;

g.    To be eligible for the Contingent Commission, Agent was required to have placed with T.H.E. gross written premium, less return premium, returned audits, and bad debts, of at least one hundred thousand $100,000 dollars on Eligible Lines for the calendar year, *id.;*

h.    To be eligible for the Contingent Commission, all balances due for that year were required to be paid in accordance with the Agency Agreement, *id.;*

i.    Agent would maintain complete records and accounts of all transactions would allow T.H.E. to inspect and audit all such records upon request, *id.*at ¶15;

j.    Agent would indemnify T.H.E. for any losses due to acts or omissions in breach of the Agency Agreement, *id.*at ¶12;

k.    T.H.E. could terminate the agreement on 60 day's written notice or immediately for breach of the agreement or "gross misconduct,"

*id.*at ¶18; and

l.      Upon termination of the Agency Agreement,  the provisions relating to commissions, record retention and availability and indemnification survive the termination, *id.*at ¶19;

12.    T.H.E. specially reserved the right to modify the Contingent Commission provision of the Agency Agreement by giving at least 60 days written notice to the Agent of the substance and effective date of the modification.  *Id.* at Section C.

## C.    T.H.E. Advises Agent to take Steps to Terminate the Agency Agreement, but Agent Fails to do so and Continues to Act as Agent of T.H.E.

13.    While the Agency Agreement was with T.H.E. directly, the ownership of the rights to sell the Entertainment and Amusement Park Insurance was delegated to, owned and managed by a T.H.E. affiliate, Allied Specialty Insurance, Inc. Agency ("Allied").

14.    In February 2020, the book of business owned and managed by Allied, including the Entertainment and Amusement Park Insurance written through Agent, was sold to McGowan Allied Specialty Insurance ("MASI").

15.    As a result of the  sale between MASI and Allied, MASI became the owner and entity responsible for managing the business written through Agent.

16.    On April 21, 2021, Agent was informed by AXA XL Insurance Americas, on behalf of T.H.E., that due to the sale of Allied to MASI, the Agency

7

Agreement needed to be terminated.  AXA requested that Agent take all necessary and required actions to carry out the termination of the Agency Agreement.

17.     Agent never took any action to terminate the Agency Agreement

18.     On January 2023, T.H.E. informed MASI that it would cease issuing new or renewal policies or certificates for the Amusement Park Insurance (which included the policies written through Agent) on January 1, 2024.  That deadline was extended to June 15, 2024 to allow MASI time to obtain another carrier for this line of business.

19.     On January 18, 2024, MASI offered Agent a new agency agreement with a lower commission rate than that set forth in the Agency Agreement .

20.     Agent refused to enter into the new agreement despite the fact that it had been advised three years prior that the Agency Agreement was being terminated and that T.H.E would cease issuing new or renewal policies or certificates for the Entertainment and Amusement Park Insurance.  Agent refused to acknowledge that it had been instructed to commence the termination of the Agency Agreement and that T.H.E. was no longer providing the  Entertainment and Amusement Park Insurance.

21.     On or about the same time, MASI demanded that Agent return certain commissions retained by Agent because Agent was retaining commissions under the Agency Agreement that was supposed to be terminated.  These commissions

were in excess of the commission permitted by agreement between MASI and T.H.E.

22.     Agent refused to return the commissions.

**D.     Agent Ceases to Report to MASI and/or T.H.E. and Continues to Improperly Retain Commissions.**

23.     Prior to May of 2024, Sportsman's had remitted premium and provided reporting that included bordereauxs showing policies and certificates sold on a monthly basis as a matter of custom and practice.

24.     In or around May 2024, Agent ceased reporting to MASI and/or T.H.E. monthly premium collection or policy/certificate sales bordereauxs.

25.      For 2023, in which Agent appears to have fully reported premium, sales and commissions, it remitted premium net of commission in the amount of $3,371,234.71.

26.     For 2024, in which Agent stopped reporting sales, it remitted premium net of commission of $2,800,069.43.

27.     For 2025, Agent provided no reports of sales, but remitted premiums net of commission of $1,463,512.

28.     As of February 2026, Agent has provided no reports of sales, but has remitted the amount of  $241,855.10.

29.     Because Agent has not submitted the required bordereaux's showing sales, T.H.E., cannot determine if all associated premium has been submitted.

9

Based on 2023 sales data, the last fully reported year, which shows 6,562 accounts, $4,428,548.35 in gross written premium and $1,057,313.64 in commissions, it appears that not all premium has been submitted.

30.    Agent has continued to retain commissions for such sales.    On information and belief, Agency has continued to retain commissions of 23% on the T.H.E. business for 2024, 2025 and 2026, in the estimated amounts of at least $644,015, $336,608, and $55,626,67, respectively (based on the remitted premium). Based on the 2023 sales data, these amounts appear to be an underestimated.

31.    The Agency Agreement also permitted a Contingent Commission if certain conditions were met, one of which includes entitlement to the non-contingent commission.   It is currently unknown whether Agent also has retained Contingent Commissions.  (The commissions for 2024, 2025, and 2026 are referred collectively referred to as the "Commissions").

E.    **Agent Continues to  Bind T.H.E. Policies**

32.    In October 2024, Agent, through its counsel,  wrote to MASI and T.H.E. complaining of the cancellation for non-payment of 17 T.H.E. policies issued to Agent's customers.   A true and correct of the October 2024 correspondence is attached as **Exhibit B**.

33.    In the same letter, Agent's counsel stated that Agent had remitted premium (net of Commissions) to MASI in early September related to those

10

policies. *Id.*

34.    Agent's counsel also stated that "several thousand members of the respective organizations are insured under these policies." *Id.*

35.    MASI confirmed that the premium for these 17 T.H.E. policies had been received and rescinded the cancellation of the 17 T.H.E. policies..

36.    On March 3, 2025, AXA XL Insurance Americas, on behalf of T.H.E., advised Agent's counsel that Agent was issuing policies and certificates illegally and demanded information on all policies and certificates issued and the premium related thereto.

37.    On March 3, 2025, Agent was sent a letter by General Counsel, AXA Americas, on behalf of T.H.E. that conditionally offered to allow Agent authority to bind policies and certificates, that were terminated as of September 24, 2024, through April 1, 2025 if: (a) all such certificates issued since September 2024 or to be issued through the April 1, 2025 extension terminated  as of December 1, 2025; and (b) Agent, within 20 days, provided T.H.E. with copies of non-renewal notices and copies of each certificate, application, binder, invoice premium charged and audit information for T.H.E. business bound under the Agency Agreement since April 21, 2021.  A copy of the March 3, 2025 letter is attached as **Exhibit  C.**

38.    Agent did not provide any of the information demanded in the March 4, 2025.

**F.    The Agency Agreement is Terminated by T.H.E.**

39.    On April 26, 2025, T.H.E., through its counsel, sent a letter to Agent's counsel stating that: (1) to the extent the prior terminations of Agency Agreement may not have been effective, the Agency Agreement was immediately terminated due to multiple breaches by Agent; (2) Agent's appointment was also being terminated; and (3) Agent's continued issuance or renewal of policies or certificates, the non-reporting of sales, and the non-remittance of premium were all substantive breaches of the Agency Agreement;. A true and correct copy of the April 26, 2025 letter is attached as **Exhibit D.**

40.    Agent did not respond to the April 26, 2025 letter.

**G.    Agent Continues to Act Without Authorization.**

41.    Eight months later, on December 23, 2025, T.H.E. received a letter from Agent's counsel stating that Agent (a) had issued extensions of coverage for T.H.E. insureds whose coverage had ended as of November 30, 2025; and (b) was "issuing additional short-term ninety (90) day extensions of coverage to ensure that all insured receive proper and legally compliance Notices of Non-renewal." A true and correct copy of the December 23, 2025 letter is attached **Exhibit E**. Thus, Defendants wholly disregarded the April 26, 2025 letter and continued to act without authority.

42.    The very next day, on December 24, 2025, T.H.E, through its counsel,

12

advised Defendants that they had no legal or other authority to issue such extensions and that it was acting without legal or contractual authority.  A true and correct copy of the December 24, 2025 letter is attached as **Exhibit F.**

43.    In the same letter, T.H.E. again demanded that Agent cease all activities and provide all the information about insureds who have not received non-renewal notices. *Id*.

44.    Agent did not provide any of the information.

45.    Despite termination of  the Agency Agreement and Defendants' refusal to enter into new agency agreement with MASI, and T.H.E.'s termination of any agreement to issue policies for the Entertainment and Amusement Park Insurance, Defendants have continued to issue new policies and group policy certificates and to bind T.H.E. to agreements that it has not agreed to.

**H.    T.H.E. is Subjected to Claims Due to Policies Improperly Issued by Defendants.**

46.    Despite termination, Defendants continued to issue T.H.E. policies without authority.  A true and correct copy of a certificate of insurance issued by Defendants in December 2025 with an effective date of December 31, 2025 is attached as **Exhibit G**.

47.    On March 25, 2026, Agent submitted a claim on behalf of the insured to whom it issued Exhibit G.

48.    T.H.E. has retained the undersigned as it counsel in this matter and is

obligated to pay them a reasonable fee for their services.

49.     All conditions precedent to bringing this action, if any, have occurred or have been performed, waived, or excused.

## COUNT I
## BREACH OF CONTRACT
### Injunctive Relief
### (Against Defendants – Ongoing Sale of Insurance Policies)

50. T.H.E. realleges paragraphs 1 through 49 as if fully set forth herein.

51.     The sole basis pursuant to which Defendants were authorized to place T.H.E insurance was through the Agency Agreement.

52.     The Agency Agreement has been terminated and Defendants' authorization to place policies on behalf of T.H.E. has been revoked.

53.     Despite termination, Agent has and continues to  write business and deliver evidence of coverage to insureds that are not approved by T.H.E.

54.     The continued placement of T.H.E. policies without authorization is a violation of Section 626.112, Fla. Stat.

55.     If Defendants continue to place policies with T.H.E, both T.H.E. and the public will suffer irreparable harm as there is a significant likelihood that the policies are not valid and any claims under those policies will not be paid.  As such the potential financial losses to consumers from unregulated insurance transactions and the broader harm to public confidence in the insurance regulatory system constitute irreparable harm.

14

56.   Absent injunctive relief, T.H.E. has no adequate remedy at law.

57.   As both the Agency Agreement and Florida law require that Defendants have the authority to place policies with T.H.E. and T.H.E. has revoked Defendants appointment, T.H.E. has a substantial likelihood of success on merits.

58.   The public interest will be served by the entry of injunctive relief preventing Defendants from continuing to place T.H.E policies.  Further, the Legislature has explicitly found that such conduct threatens the health, safety, and welfare of the residents of this state.

59.   Absent judicial intervention Defendants' actions are likely to continue.

WHEREFORE, Plaintiff, T.H.E. INSURANCE COMPANY, a Delaware insurance company, respectfully requests the entry of judgment against Defendant, SPORTSMAN'S INSURANCE AGENCY, INC. a Florida corporation, and LESLIE CASANOVA, an individual, for preliminary and permanent injunctive relief, and any further relief deemed just and equitable.

**COUNT II**
**<u>BREACH OF FIDUCIARY DUTY</u>**
**(Violation of Fla. Stat. Code §626.561(1))**
**(Against Defendants)**

60.   T.H.E. realleges paragraphs 1 through 49 as if fully set forth herein.

61.   Defendants collected premiums, return premiums, or other funds on

behalf of T.H.E.

62.     Defendants are required to hold all premiums, return premiums, or other funds belonging to T.H.E as a fiduciary.

63.     Defendants have not accounted for nor paid to T.H.E. the wrongfully withheld Commissions or the gross premium not remitted for other sales, renewals, or extension in 2024, 2025 and 2026 (the "Withheld Gross Written Premium") in breach of its fiduciary obligations.

64.     As a result of Defendants' breach of their fiduciary duties, T.H.E. has suffered and continues to suffer damages.

WHEREFORE, Plaintiff, T.H.E. INSURANCE COMPANY, a Delaware insurance company, respectfully requests the entry of judgment against Defendant, SPORTSMAN'S INSURANCE AGENCY, INC. a Florida corporation, and LESLIE CASANOVA, an individual, for damages and interest, attorneys' fees, and any further relief deemed just and equitable.

**COUNT III**
**BREACH OF CONTRACT**
**(Failure to Pay - Against Agent)**

65.     T.H.E realleges paragraphs 1 through 49 as if fully set forth herein.

66.     The Agency Agreement is a valid and enforceable Agreement.

67.     Section C of the Agency Agreement provides:

> To be eligible for any commission, Agent guarantees payment to [T.H.E.] of all premium collected on behalf of

16

[T.H.E.]. Agent shall forward the full net premium ("net premium: is the gross premium less commission) to [T.H.E.] within 45 days of the bordereau date.

Exhibit A at Section C.

68.   Section C of the Agency Agreement further provides that "[n]o Contingent Commission shall be payable for any year unless all balances are due for that year have been paid in accordance with this Agreement." *Id.*

69.   Section 9 of the Agency Agreement provides that "[f]unds received by Agent on behalf of [T.H.E.], minus the applicable base commission earned by Agent, shall be the property of [T.H.E.], shall be maintained by Agent and shall be deposited in a specially designated and segregated account." *Id.* at 9.

70.   Agent has breached the Agency Agreement by not paying T.H.E. the excess commission deduction from premium as demanded by MASI.

71.   In addition, Agent has not paid in full all the premium collected for the sale, renewal or extension of policies or group certificates from May, 2024 to present.

72.   Since Agent has not paid the full amount of premium due in 2024, 2025 and 2026, it is not entitled to any commission payment.

73.   Whatever premium Agent did remit, it did so net of commissions. Accordingly, Agent also is required to pay to T.H.E. any commissions withheld from those payments.

17

74.    As a result of Agent's breaches of the Agency Agreement, T.H.E. has suffered and continues to suffer damages.

WHEREFORE, Plaintiff, T.H.E. INSURANCE COMPANY, a Delaware insurance company, respectfully requests the entry of judgment against Defendant, SPORTSMAN'S INSURANCE AGENCY, INC. a Florida corporation, for damages and interest, attorneys' fees, and any further relief deemed just and equitable.

## COUNT IV
## BREACH OF CONTRACT
### (Failure to Maintain Records - Against Agent)

75.    T.H.E. re-alleges paragraphs 1 through 49 as if fully set forth herein.

76.    Section 15 of the Agency Agreement, requires Agent to "keep complete records and accounts of all transactions and will allow [T.H.E.] to inspect and audit all such records and accounts at [T.H.E.'s] request."  Exhibit A at ¶15.

77.    T.H.E. has demanded on multiple occasions that Agent provide documentation of sales, premium collection and copies of policies and certificates.

78.    Agent has not provided the documentation demanded or access to T.H.E. of its records of sales, renewals, or extensions of T.H.E. policies or certificates, or as to any retained commissions.

79.    Agent's multiple breaches of the Agency Agreement have caused and continue to cause damage to T.H.E.

18

WHEREFORE, Plaintiff, T.H.E. INSURANCE COMPANY, a Delaware insurance company, respectfully requests the entry of judgment against Defendants, SPORTSMAN'S INSURANCE AGENCY, INC. a Florida corporation, for damages and interest and any further relief deemed just and equitable.

## COUNT V
## INDEMNIFICATION
### (Against Agent)

80.    T.H.E. re-alleges paragraphs 1 through 49 as if fully set forth herein.

81.    The Agency Agreement is a valid agreement between T.H.E and Agent.

82.    Section 12 of the Agency Agreement states in pertinent part: "Agent agrees to indemnify, defend and save harmless [T.H.E.] for the legal liability arising from the acts and/or omissions of Agent, including any breach of the Agent's representations and warranties or a breach of this Agreement."

83.    On or about March 25, 2026_, Plaintiff received a Notice of Claim under a policy sold by Agent after Agent's termination as a part of the Entertainment and Amusement Park Insurance.

84.    The policy was not authorized by T.H.E and both Defendants were aware that the policy was not authorized by T.H.E.

85.    The claim was fraudulently submitted by Agent.

86.    T.H.E. has incurred damages and will continue to incur damages as a

19

result of Agent's actions.

WHEREFORE, Plaintiff, T.H.E. INSURANCE COMPANY, a Delaware insurance company, respectfully requests the entry of judgment against Defendants, SPORTSMAN'S INSURANCE AGENCY, INC. a Florida corporation,, for damages and interest and any further relief deemed just and equitable.

**COUNT VI**
**<u>EQUITABLE ACCOUNTING</u>**
**(Against Agent)**

87.    T.H.E. re-alleges paragraphs 1 through 49 as if fully set forth herein.

88.    Agent collected and withheld the Withheld Gross Written Premium and Commissions as a fiduciary.

89.    Agent has not reported accounts to T.H.E. since at least May of 2024, so T.H.E. does not have access to sufficient records to determine the aggregate amount of Withheld Gross Premium, Commissions or other funds improperly retained by Agent, as well as the number of illegal policies, certificates, renewals, or extensions sold by Agent.

90.    There has been no open denial or repudiation of the fiduciary relationship by Agent.

91.    The contract demands are complicated as they involve the review of several years of accounts and the billing, collection, and remittance of potentially thousands of insureds.

92.     Plaintiff has no adequate remedy at law.

WHEREFORE, Plaintiff, T.H.E. INSURANCE COMPANY, a Delaware insurance company, respectfully requests that entry of judgment in its favor and against Defendant, SPORTSMAN'S INSURANCE AGENCY, INC. a Florida corporation, for equitable accounting, and awarding, including but not limited to damages and interest, and any further relief deemed just equitable.

Dated:       April 23, 2026

**SAUL EWING LLP**
701 Brickell Avenue, 17th Floor
Miami, Florida  33131
Telephone:          (305) 428-4500
Facsimile:   (305) 374-4744
E-Mail:        hilda.piloto@saul.com
                 tracy.alger@saul.com
                 mia-ctdocs@saul.com

By:   */s/ Hilda Piloto*
       Hilda Piloto
       Florida Bar No. 0154120